(No. 78-CC-0344—

WILDER MOBILE HOMES, INC., Claimant, *v.* THE STATE OF ILLINOIS, STATE FAIR AGENCY, Respondent.

*Opinion filed June 18, 1980.*

HULL, CAMPBELL, ROBINSON & GIBSON, for Claimant.

WILLIAM J. SCOTT, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant was the owner of four model 11-70-23 Monarch Industries mobile homes. By an instrument dated May 16, 1974, Claimant leased to Respondent these mobile homes for a 12-month minimum period commencing June 1, 1974, for $2,100.00 per month (attachment 2 of Departmental Report). It was provided in this agreement that upon termination of this agreement that the Respondent would have the option to renew this agreement on a monthly basis or should the Claimant decide to abandon their property the parties could agree

upon a price for the property at which time ownership would pass to the Respondent. On August 18, 1975, Mr. Paul H. King, State Fair Manager, sent a letter to Claimant in which he authorized Claimant to extend the lease on these buildings. On September 2, 1975, Mr. Paul H. King executed an affidavit confirming the contract extension as an emergency. On October 22, 1975, the audit of the Auditor General regarding the State Fair Agency revealed that the contracts at that time were in violation of the State Purchasing Act inasmuch as there were no competitive bids and there was no advertisement for bids. On July 1, 1976, Claimant and Respondent entered into a new written agreement whereby Claimant leased the four mobile homes to Respondent for a period commencing July 1, 1976, and ending June 30, 1977. Respondent agreed to pay $2,100.00 per month. Also on July 1, 1976, Mr. King executed an affidavit wherein he defined the new lease agreement as an emergency extension contract. On July 1, 1977, Nicholas L. Stone, State Fair Superintendent, initiated an agreement whereby Respondent would agree to lease these homes for another twelve months commencing with July 1, 1977, through June 30, 1978, if at the end of this period Claimant would agree to convey the titles to the homes to Respondent. This contract was signed by the State Fair Superintendent but not by Claimant. In all of the leases entered into for these mobile homes between Claimant and Respondent the leases were not awarded pursuant to competitive bidding and there were no advertisements for bids. The leases were, therefore, in violation of section 10 of the State Purchasing Act (Ill. Rev. Stat. 1979, ch. 127, par. 132.10). Respondent paid Claimant rental at the agreed rate of $2,100.00 per month until June 30, 1977. By letter dated January 19, 1978, Grady E. Holley, as attorney for Respondent, notified Claimant's attorney, John K. Greanias, that Respondent had vacated the mobile homes and

that the same were to be removed by Claimant as soon as possible.

Mr. King did not have the legal authority to lease the mobile homes since there had been no compliance with the bidding procedures required by the Illinois Purchasing Act. A contract which is in violation of the Purchasing Act is null and void and no recovery can be had under it. *Dement et al. v. Rokker et al.*, 126 Ill. 174. The State is not estopped from denying the legality of a contract even though it has accepted the benefits. *Dement, supra; Schuenig v. State*, 11 Ill. Ct. Cl. 634. Where an express contract is prohibited by law, an action will not be on quantum meruit. *Green and Sons Co. v. State*, 9 Ill. Ct. Cl. 218. It is also well settled law that one dealing with an agent of the State is bound to know the extent of his authority. *Illinois Central Railroad Co. v. State*, 18 Ill. Ct. Cl. 214.

Accordingly, it is hereby ordered that the claim be and the same is hereby denied.